**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| NOURIA ENERGY WHOLESALE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | **CASE NO.** |
| | ) | |
| v. | ) | |
| | ) | |
| K.O. PETROLEUM LLC d/b/a C AND K | ) | |
| Variety, and TYLOR PERRY as | ) | |
| GUARANTOR | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT**

Plaintiff, Nouria Energy Wholesale, Inc. ("Nouria"), by and through undersigned counsel, hereby alleges, as follows:

**INTRODUCTION**

1.      This lawsuit concerns an action for damages for multiple defaults and breaches of contract by Defendant K.O. Petroleum LLC d/b/a C and K Variety ("C&K"), and C&K's guarantor, Tylor Perry ("Mr. Perry"), after C&K stopped making payments, purchasing fuel, and complying with numerous other obligations in accordance with the terms of a contract for the purchase and sale of gasoline fuel products between Nouria and C&K.

**THE PARTIES**

2.      Plaintiff, Nouria Energy Wholesale, Inc. ("Nouria" or "Plaintiff"), is a Massachusetts corporation, with a principal place of business at 326 Clark Street, City of Worcester, County of Worcester, and Commonwealth of Massachusetts.

3.      Defendant K.O. Petroleum LLC d/b/a C and K Variety ("C&K") is an administratively dissolved Maine limited liability company with its registered agent's address listed at 8 Billings Road, Town of Hermon, County of Penobscot, Maine.

4.      C&K's sole member/manager is Tylor Perry, an individual residing at 16 Sandy Beach Road, Town of Glenburn and State of Maine, 04401.

5.      Defendant Tylor Perry is an individual residing at 16 Sandy Beach Road, Town of Glenburn and State of Maine, 04401.

## VENUE AND JURISDICTION

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that Defendants and their members maintain complete diversity of citizenship with Nouria, and the amount in controversy exceeds $75,000.00.

7.      This Court has personal jurisdiction over Defendants and venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the site of the retail business at issue is in Maine, and a substantial part of the events giving rise to the claims occurred within the District of Maine.

## FACTUAL ALLEGATIONS

8.      Defendant C&K owned and operated a retail gas station located at 8 Billings Road, Town of Herman, County of Penobscot, Maine (hereinafter, the "Premises").

9.      Plaintiff Nouria is a regional distributor of fuel products that enters into supply agreements with retailers such as C&K for the purpose of selling branded and unbranded fuel to retail gas stations and convenience stores throughout the Northeast.

10.     On or about June 22, 2023, H.A. Mapes, Inc. ("Mapes") entered into a certain Product Sales Agreement ("Agreement") with C&K whereby Mapes agreed to sell, and C&K agreed to exclusively purchase from Mapes, all Motor Fuels Product (*i.e*., Citgo-branded regular

2

gasoline, premium gasoline, and low sulfur diesel) for retail sale at the Premises, for a seven year term. A copy of the Agreement is attached hereto as **Exhibit A**.

11.     Paragraph 13 of the Agreement provides that C&K shall purchase such Motor Fuels Products through the later to occur of June 22, 2030, or its purchase of 5,040,000 aggregate gallons.

12.     Paragraph 3 of the Agreement provides that the price for Motor Fuels Product shall be "Citgo rack price, plus freight $0.0307, plus applicable fuel surcharge, plus $0.01 cent per gallon for each respective grade of said gasoline and diesel products in effect at the time of delivery . . ."

13.     In consideration for C&K entering into the Agreement and its commitment to purchase Motor Fuels Product in accordance with the terms thereof, C&K was provided $60,000.00 (the "Branding Improvement Payment") in brand imaging improvements to the Premises pursuant to Paragraph 14(a) of the Agreement: "MAPES will reimage [C&K's] location to meet all 'Citgo Illuminate Image' standards as permitted by local code and sign ordinances. The total estimated cost of reimaging to the Citgo Illuminate Image is Sixty Thousand ($60,000.00)." *See* Ex. A.

14.     In further consideration for C&K entering into the Agreement and its commitment to purchase Motor Fuels Product in accordance with the terms thereof, C&K was paid a Fifty Thousand Dollar ($50,000.00) signing bonus ("Signing Bonus Payment") pursuant to Paragraph 14(a) of the Agreement:  "Upon the Citgo branding Completion, Citgo through MAPES will pay [C&K] a Fifty Thousand Dollar ($50,000.00) . . ." *See* Ex. A.

15.     Paragraphs 13 and 14(c) of the Agreement further elaborate on the intended term of the Agreement and C&K's related Motor Fuels Product commitment, as well as their nexus to the Signing Bonus Payment and Branding Image Payment, providing, respectively, that "the

commitment period is both a time and volume Agreement of 7 years and 5,040,000 gallons of Citgo Branded Gasoline, whichever comes last", and that "[p]rogram payments are based on [C&K's] location being operated as a branded Citgo location for at least a seven (7) year period with a minimum annual motor fuels volume of at least 720,000 gallons per year, and a total of 5,040,000 gallons by the end of this Agreement." *See* Ex. A.

16.    Paragraph 19 of the Agreement grants Mapes "the right to assign its rights and duties under this Agreement." *See* Ex. A.

17.    On or about August 15, 2023, Nouria purchased Mapes's rights under the Agreement.  In connection with that purchase, Mapes and Nouria executed a Dealer Contracts Assignment and Assumption Agreement by which Mapes "assign[ed] all of [its] rights, title and interests, and delegate[d] to [Nouria] all of [its] obligations and duties of performance, first arising from and after the Day 1 Closing Date under" the Agreement.  The Day 1 Closing Date was on or about August 15, 2023.  Thus, Nouria is the successor-in-interest to the Agreement, with standing to pursue this claim.  A copy of the Assignment and Assumption Agreement is attached hereto as **Exhibit B**.

18.    On or about August 9, 2023, C&K acknowledged, in a Confirmation of Facts Certificate provided for Nouria's benefit, that, among other things, the term of the Agreement ran through June 22, 2030, as well as its then unsatisfied 5,040,000 Motor Fuels Product gallons commitment.  A copy of the Confirmation of Facts Certificate is attached hereto as **Exhibit C.**

19.    To secure C&K's obligations under the Agreement, Paragraph 7(f) granted a security interest and/or purchase money security interest in (i) C&K's inventory of petroleum products purchased from Mapes, regardless of when purchased, (ii) all accounts receivable owing

4

to C&K, regardless of when or how incurred, (iii) all of C&K's equipment purchased from Mapes, and (iv) all proceeds of C&K's inventory, accounts receivable, and equipment.  *See* Ex. A.

20.    In order to perfect its lien and security interest in collateral granted by C&K under Paragraph 7(f) of the Agreement, Nouria filed a UCC-1 financing statement with Maine's Secretary of State, bearing the Filing No.: 20250925109000029-76 on September 25, 2025.  A true and accurate copy of the Financing Statement is attached hereto as **Exhibit D**.

21.    On or about July 31, 2025, Nouria, at C&K's request, delivered approximately 6,000 gallons of Motor Fuels Product to the Premises.

22.    C&K accepted delivery of the Motor Fuels Product.

23.    The Motor Fuels Product was duly invoiced by Nouria to C&K at Citgo rack price, plus freight $0.0307, plus applicable fuel surcharge, plus $0.01 cent per gallon, plus taxes, in each case in accordance with the terms of the Agreement, with a total due of $17,060,11.  Nouria's Statement of Accounts is attached as **Exhibit E.**

24.    Nouria applied C&K's credit card and loyalty receivables balance in the amount of $10,855.26 toward the July 31, 2025 invoice, leaving a balance due of $6,204.85.

25.    Paragraph 6 of the Agreement grants Nouria the right to initiate electronic funds withdrawal from C&K's designated account to satisfy any required payment.

26.    When Nouria initiated an electronic funds withdrawal of the $6,204.85 amount from C&K's designated account pursuant to the Agreement, C&K's bank denied the payment request due to insufficient funds in C&K's account.

27.    Shortly thereafter, commencing on or about August 2025, C&K ceased operating the Premises.

28.     After multiple failed attempts to collect payment, Nouria sent a demand letter to C&K on or about October 13, 2025 informing C&K that it had materially breached the Agreement, and that Nouria intended to pursue legal action if C&K did not cure its nonpayment, then in the amount of $6,631.33.  A copy of the Demand Letter is attached hereto as **Exhibit F**.

29.     Despite the demand, Defendants never paid the long past due amounts to Nouria pursuant to the Agreement.

30.     The amount then due for unpaid Motor Fuels Product and related operational fees was $8,119.37, reflecting the outstanding balance of $6,204.85, plus  firewall and monthly network fees, plus costs and attorney's fees.

31.     C&K's failure to make this payment, failure to operate the Premises, failure to purchase Motor Fuels Product since July 2025, and failure to comply with numerous other branding and related requirements constitute breaches of the Agreement as well as events of default under Paragraph 20 of the Agreement.

32.     In the event of such defaults, Paragraph 15 of the Agreement entitles Nouria "the right to terminate . . . [the Agreement]" and Paragraph 20 grants Nouria the right to recover "all of the costs, charges, fees, or other expenses, including attorney's fees, which [Nouria] shall incur in enforcing this agreement." *See* Ex. A.

33.     The Agreement contains a Personal Guaranty, which provides that Tyler Perry as "GUARANTOR, shall personally guaranty the payment of such sums of money which may . . . be an indebtedness or liability of [] [C&K] to MAPES, including without limitation for goods supplied, rentals or other charges arising out of this Agreement, as well as performance of all of [C&K's] obligations under this Agreement." *See* Ex. A. at ¶ 25.

6

34.    Tyler Perry, in his personal capacity as personal guarantor, is jointly and severally liable for any breach by C&K.

35.    From the commencement of the term of the Agreement through the closing of the Premises on or about August 2025, C&K purchased a total of 619,185 gallons of Motor Fuels Product toward its commitment to purchase 5,040,000 aggregate gallons of Motor Fuels Product, leaving an unsatisfied commitment of 4,420,815 gallons.

## COUNT I – BREACH OF CONTRACT
### (Against C&K)

36.    Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 - 35 above.

37.    Nouria and C&K are parties to a binding contract for the purchase, sale, and delivery of fuel products.

38.    The Agreement was an exclusive contract to provide C&K with all Motor Fuels Product which the Premises required, with "a minimum annual motor fuels volume of at least 720,000 gallons per year, and a total of 5,040,000 gallons by the end of [the] Agreement." *See* Ex. A.

39.    Pursuant to the Agreement, Nouria agreed to sell and deliver Motor Fuels Product to C&K.

40.    C&K agreed to order and pay Nouria for the Motor Fuels Product for the full term of the Agreement.

41.    Nouria properly performed all its obligations under the Agreement, including delivering requested Motor Fuels Products to C&K in accordance with the terms of the Agreement.

42.    C&K has failed to pay Nouria for the Motor Fuels Product delivered on July 31, 2025.

7

43.  As of March 27, 2026, the outstanding balance owed by C&K for Motor Fuels Product delivered by Nouria, plus regularly unpaid monthly firewall and network fees payable under the Agreement, plus a non-return fee for a Nouria-owned Citgo POS modem at the Premises was $8,119.37.

44.  C&K's failure to make payment(s) is an event of default and material breach of the Agreement.

45.  From August 1, 2025 through present, C&K ceased ordering and purchasing Motor Fuels Product from Nouria and, upon information and belief, ceased operating the Premises. C&K's failure to continue operating its business and to order Motor Fuels Product from Nouria through the end of the Agreement's term is also an event of default and material breach of the Agreement.

46.  Based on C&K's 4,420,815 unsatisfied Motor Fuels Product gallons commitment, and Nouria's express profit margin of .01 cents per gallon set forth in Paragraph 3 of the Agreement, the amounts owed for the remainder of the term of the Agreement is at least $44,208.

47.  Furthermore, Section 14(d) of the Agreement provides that:

> "[i]n the event that this Agreement is terminated or [C&K's] location is de-branded, for any reason, prior to the expiration of the seven (7) year term, [C&K] shall reimburse Citgo through [Nouria], or [Nouria], as the case may be, all or a portion of the Citgo Illuminate Reimaging Costs [and] . . . Signing Bonus . . . which reimbursement shall be based on the number of years [C&K's] location was branded Citgo after the effective start date as follows:

> | Number Years Branded Citgo | Percentage of Citgo Illuminate Reimaging Costs, Signing Bonus, and Rebate Allowance Payments to be Reimbursed to MAPES |
> | --- | --- |
> | Less than 12 Branded Months | 100% |
> | 13 Branded Months to 84 Branded Months | 100% Minus (Number of Branded Months less12 months times .0119%) |

More than 84 Branded Months                    0%"

48.     Based upon the repayment formula set forth in Paragraph 14(d) of the Agreement, C&K is required to reimburse Nouria $58,215.00 in Branding Improvement Payment, plus $48,512.00 in Signing Bonus Payment.

49.     Nouria has been, and continues to be, greatly and substantially damaged by C&K's failure to make payment on the outstanding invoice and failure to continue operating its business and make future purchases of Motor Fuels Product in accordance with the terms of the Agreement.

50.     C&K is liable to Nouria for all damages incurred as a result of the material breach(es) of the Agreement, including Nouria's attorneys' fees and other costs incurred in enforcing its rights thereunder.

51.     Furthermore, Nouria retains enforcement rights due to C&K's default and material breach(es) of the Agreement, with respect to C&K's collateral described in Paragraph 7(f) of the Agreement, as the Agreement was signed by C&K, value was given in exchange for this security interest, and Nouria perfected this security interest when it filed the UCC-1 Financing Statement with the Maine Secretary of State, on September 25, 2025.

52.     Further, Nouria had the capacity to supply Motor Fuels Product to fulfill its contractual obligations with C&K, as well as to make additional, subsequent sales of fuel products to other customers of Nouria, including other resale buyers, for the remainder of the term of the Agreement.

53.     Nouria would have profited from the sale of gasoline and diesel products to both Nouria's other customers and to C&K absent C&K's breach(es) of the Agreement.

54.     Thus, in the event that the measure of lost profit damages is inadequate to place Nouria in as good as a position as it would have been in if C&K had fully performed its obligations

9

under the Agreement, Nouria is a lost-volume seller entitled to monetary damages calculated by the profit Nouria would have made from full performance by C&K, together with incidental damages reasonably incurred, in accordance with Me. Rev. Stat. Ann. Title 11, section 2-708(2).

## COUNT II – BREACH OF GUARANTY UNDER THE CONTRACT
### (Against Tyler Perry as Guarantor)

55.     Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 - 54.

56.     The personal guaranty in the Agreement is valid, binding, and enforceable.

57.     Pursuant to the personal guaranty in the Agreement, Tylor Perry is jointly and severally liable for C&K's obligations, liabilities, and indebtedness under the Agreement.

58.     C&K has materially breached its performance and payment obligations under the Agreement.

59.     Mr. Perry is jointly and severally liable for all damages incurred due to C&K's material breaches of the Agreement, including Nouria's attorneys' fees and other costs incurred in enforcing its rights thereunder.

## COUNT III – UNJUST ENRICHMENT
### (Against C&K)

60.     Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 – 59.

61.     In consideration for C&K's commitment to purchase "a minimum annual motor fuels volume of at least 720,000 gallons per year, and a total of 5,040,000 gallons by the end of [the] Agreement", C&K was provided a $60,000 Branding Improvement Payment and $50,000 Signing Bonus Payment pursuant to Section 14(a) of the Agreement.

62.     C&K was also provided approximately 619,185 of Motor Fuels Product in accordance with Nouria's obligations under the Agreement.

63.     The Motor Fuels Product delivered and the Branding Improvement Payment and the Signing Bonus Payment conferred benefits on C&K and C&K had knowledge and appreciation of the benefits conferred upon it.

64.     C&K failed to compensate Nouria for the benefits Nouria provided and that C&K accepted and received.

65.     It would be unfair and inequitable for C&K to retain such benefits without compensating Nouria and therefore, C&K should be disgorged of the amounts by which it was unjustly enriched.

### REQUEST FOR RELIEF

Plaintiff Nouria Energy Wholesale, Inc. respectfully requests that the Court enter judgment in its favor for all claims against Defendants K.O. Petroleum LLC d/b/a C and K Variety, and Tylor Perry, and grant such relief as follows:

A.     On Count I of this Complaint, awarding Plaintiff reasonable damages, including interest, penalties, costs, and attorneys' fees;

B.     On Count II of this Complaint, awarding Plaintiff reasonable damages, including interest, penalties, costs, and attorneys' fees;

C.     On Count III of this Complaint, awarding Plaintiff reasonable damages, including interest, penalties, costs, and attorneys' fees; and

D.     Granting such other and further relief as this Court deems just and proper.

Dated: April 17, 2026                   */s/ Christopher R. Drury*
                                        Christopher R. Drury
                                        Gordon Rees Scully Mansukhani, LLP
                                        One Financial Plaza
                                        755 Main Street, Suite 1700
                                        Hartford, CT 06103
                                        Phone: 860-494-7552
                                        Fax: 860-560-0185
                                        cdrury@grsm.com

                                        Counsel for Plaintiff **Nouria** Energy
                                        Wholesale, Inc.

12